IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA

v.                                          CRIMINAL ACTION NO. 1:05CR107-1


NATALIE JEAN PAGAN,

                    Defendant.

## ORDER/OPINION

On the 23rd day of January, 2006, came the United States of America by Shawn Angus

Morgan, Assistant United States Attorney, and also came the defendant, Natalie Jean Pagan, in

person, and by her counsel, Thorn H. Thorn, for hearing on the Petition for Action on Conditions

of Pretrial Release alleging that Pagan violated Mandatory Condition 1 and Standard Conditions

7(a) and 7(p) of her Conditions of Release.

## I. Procedural History

On December 20, 2005, Defendant Natalie Jean Pagan was released on conditions set by

Order. On January 18, 2006, pre-trial services officer John A. Burlas filed a "Petition for Action

on Conditions of Pretrial Release" alleging Defendant violated Mandatory Condition 1 and

Standard Conditions 7(a) and 7(p) of her Conditions of Release. By Order dated January 18,

2006, the undersigned directed Defendant be arrested and brought before the Court to answer the

allegations made against her in the Petition. Defendant was arrested pursuant to the Court's

order on January 18, 2006.

## II. Contentions

The Petition alleges that Defendant:

1. Violated Mandatory Condition No. 1 of the Order Setting Conditions of Release which states: The defendant shall not commit any offenses in violation of federal, state or local law;

2. Violated Standard Condition No.7(a) of the Order Setting Conditions of Release which requires Defendant to report to U.S. Probation as directed; and

3. Violated Standard Condition No. 7(p) of the Order Setting Conditions of Release which required Defendant to refrain from the use or unlawful possession of a narcotic drug or other controlled substances.

The stated grounds for the Petition are as follows:

On January 18, 2006, Ms. Pagan failed to report to the U.S. Pretrial Services Office as directed. As a result, U.S. Pretrial conducted an unannounced home visit, located the defendant and escorted her to the Pretrial Services Office. At that time, a urine screen was obtained which preliminarily screened positive for cocaine and marijuana. Just prior to the drug test, the defendant advised Pretrial Services that on January 17, 2006, she used both marijuana and cocaine with two acquaintances, a/k/a Diane and J.D., at a/k/a Diane's home located on 14th Street in the North View section of Clarksburg.

Prior to the taking of evidence, Defendant, through counsel, waived the hearing regarding violations one (1) and three (3), admitting she violated those provisions by using marijuana and cocaine the day before the urine drug screen. She denied violation number two (2), that she did not report to Probation as directed, stating she had telephoned her pretrial services officer and informed him she did not have a ride to the office. From the colloquy between the Court and the defendant, the Court concludes Defendant's decision to admit to violations one (1) and three (3) was freely, knowingly, and voluntarily made.

Defendant argued for her release to a Veterans Administration ("VA") inpatient drug abuse treatment program.

The Court heard the testimony of Pretrial Services Officer Burlas and Defendant. Mr.

Burlas testified he had supervised Defendant since November 23, 2005, when she was first released on conditions set during her Initial Appearance pursuant to a Complaint filed against her on November 22, 2005. He testified Defendant was scheduled to report to the U.S. Probation Office on January 18, 2006, at 9:00 a.m. Defendant telephoned the office at 8:30 a.m., informing Mr. Burlas she was unable to get a ride to the office because it was snowing. She informed him she was going to walk to the office. Mr. Burlas agreed, but advised he would only be in the office until 11:30 a.m. Mr. Burlas testified Defendant was residing about 1 ½ miles from the U.S. Probation Office. When Defendant had not arrived at the Probation Office at 10:30 a.m., Mr. Burlas telephoned her residence. He was informed by Defendant's daughter or a friend of her daughter that Defendant was in bed sleeping. Mr. Burlas asked fellow United States Pretrial Services Officers Vincent Zummo and Stacey Claxton and a Drug Task Force Agent to accompany him to Defendant's residence. They then escorted her to the Probation Office, where they obtained a urine specimen from Defendant that tested positive for marijuana and cocaine. Defendant admitted having used marijuana and cocaine the day before.

Mr. Burlas also testified that Defendant was supposed to have been going to Intensive Drug Treatment at the Summit Center starting in mid-December, but never went.

Defendant testified she was scheduled to begin the Outpatient Intensive Program at the Summit Center in December, but had not been scheduled for an Intake, which was required, until January 11, 2006. She testified she did go through the Intake on that date, and was scheduled to start the Intensive Outpatient Program on January 18, 2006, the day she was arrested.

Defendant testified that in order to obtain inpatient treatment at the VA, she would only have to get to the Fourth Floor of the VA hospital and sign herself in. She was already registered.

Defendant testified she had been eligible for VA services since her discharge from the military in 1993. She had a drug problem since she was in the army in 1990. Although she could have gone into the VA inpatient drug treatment program, she chose instead to go to the outpatient program at Summit Center to spend more time with her son. Defendant was not sure whether by signing herself in to the VA treatment program she could also sign herself out.

Defendant testified she had been in drug treatment before. In or about 1997, she completed a 28-day inpatient program through the VA at Perry Point Maryland. In or about 1999, she completed another 28-day inpatient program at Turning Point in New Jersey through a program for indigents, because she was pregnant. She then completed a six-week Intensive Outpatient Program at the Summit Center sometime in 2005. She completed that program, but stopped going to the voluntary "after care program" at the Summit Center in fall 2005.

### III. Findings Of Fact

Based on the testimony presented at the hearing held January 23, 2006, and the docket record as the same existed on January 23, 2006, the undersigned makes the following findings of fact:

1) Defendant was placed on conditional release by Order dated December 20, 2005.

2) Mandatory Condition No. 1 of the Order Setting Conditions of Release states: The defendant shall not commit any offenses in violation of federal, state or local law.

3) Standard Condition No.7(a) of the Order Setting Conditions of Release requires Defendant to report to U.S. Probation as directed.

4) Standard Condition No. 7(p) of the Order Setting Conditions of Release requires Defendant to refrain from the use or unlawful possession of a narcotic drug or other

controlled substances.

5)    Defendant was released from federal custody on December 20, 2005, pursuant to the Order Setting Conditions of Release.

6)    Defendant signed an acknowledgment that she was aware of the conditions of her release, was aware of the penalties and sanctions for violations of her conditions of release, and promised to obey her conditions of release.

7)    Defendant is Pretrial Services Officer John A. Burlas's assigned supervisee.

8)    On January 18, 2006, Ms. Pagan failed to report to the U.S. Pretrial Services Office as directed. As a result, U.S. Pretrial Services conducted an unannounced home visit, located the defendant and escorted her to the Pretrial Services Office.

9)    A urine screen was obtained on January 18, 2006, which preliminarily screened positive for cocaine and marijuana. Just prior to the drug test, the defendant advised Pretrial Services that on January 17, 2006, she used both marijuana and cocaine with two acquaintances, a/k/a Diane and J.D., at a/k/a Diane's home located on 14th Street in the North View section of Clarksburg.

10)   Defendant voluntarily admitted she used drugs on January 17, 2006, in violation of her Conditions of Release.

11)   Defendant has had a longstanding drug abuse problem.

12)   Defendant has undergone three prior treatment programs, one 28-day inpatient program in 1997, at Perry Point, Maryland; one 28-day inpatient treatment program at Turning Point in New Jersey in 1999; and a six-week Intensive Outpatient Program at the Summit Center just last year.

13)     After completing the Intensive Outpatient Program at the Summit Center, Defendant failed

to continue attending the voluntary "after care program."

14)     All of the above was prior to the January 17, 2006, use of marijuana and cocaine.

## IV.   Conclusion

Upon consideration of all the evidence, the undersigned concludes by a preponderance of

the evidence that Defendant violated the Conditions of her Release as stated in the Order Setting

Conditions of Release entered December 20, 2005.

Based on the factors set forth in 18 U.S.C. §3142(g) and the clear and convincing evidence

presented at the hearing, the undersigned finds Natalie Jean Pagan is unlikely to abide by any

condition or combination of conditions of release the Court could fashion above and beyond those

already Ordered and available to her.  Although Defendant had available to her inpatient treatment

at the VA, she had not availed herself of that opportunity prior to being arrested on January 18,

2006.

It is therefore **ORDERED** that, pursuant to the provisions of 18 U.S.C. §3148 (a) ,

(b)(1)(B) and (2)(A) and (B), the release of Defendant Natalie Jean Pagan on conditions is

**REVOKED** and that:

1)      Defendant be **REMANDED** to the custody of the United States Marshal pending

        further proceedings in this case;

2.      Defendant be confined in a  facility separate, to the extent practicable, from

        persons awaiting or serving sentences or being held in custody pending appeal;

3.      Defendant be afforded a reasonable opportunity for private consultation with

        defense counsel;

4.    On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which Defendant is confined shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding; and

5.    The Clerk shall direct copies of this order to counsel for the United States, to counsel for the defendant, to the United States Marshal, and to the United States Probation Officer.

DATED: January 23rd, 2006.

/s *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE